

John R. Downey
E-mail: jdowney@rms-law.com
Direct Dial: 860-493-3432
Admitted: CT

One State Street  Hartford, CT 06103
phone 860.549.1000  fax 860.724.3921
www.romemcguigan.com

January 30, 2013

The Honorable Robert N. Chatigny
United States District Court
District of Connecticut
450 Main Street - Room 135 Annex
Hartford, Connecticut 06103

    Re:    Securities and Exchange Commission v. Southridge Capital Management LLC, et al., 3:10-cv-01685

Dear Judge Chatigny:

    We represent defendants Southridge Capital Management LLC, Southridge Advisors LLC (collectively, "Southridge") and Stephen M. Hicks (collectively with Southridge, "Defendants") in this matter. In accordance with your Chambers Practices, we write to respectfully request a prefiling conference to address Defendants' intended motion for summary judgment, described below, and the Securities and Exchange Commission's ("SEC") intended summary judgment motion.

    On Tuesday, January 29, 2013 counsel for Defendants met and conferred with counsel for the SEC telephonically. During this conference, Defendants discussed their intended motion for summary judgment in an attempt to clarify the issues and arrive at a mutually satisfactory resolution in accordance with Connecticut Local Rule 9(2). Despite Defendants best efforts to reach a mutually satisfactory resolution with the SEC, no resolution was met.

    Defendants' intended motion would seek summary judgment for all five of the SEC's claims. A brief discussion of the grounds for the motion as to each claim follows:

### Plaintiff's First, Second, and Third Claims for Relief

    The Complaint's first three claims – for violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"), Section 10(b) (and Rule 10b-5 thereunder) of the Securities Exchange Act of 1934 ("Exchange Act"), and Section 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") (and Rule 206(4)-8 thereunder[1]) – are predicated on the SEC's allegation that Defendants made "false and misleading"

---

[1] Rule 206(4)-(8) became effective in September 2007. Therefore, the intended motion will establish that the SEC cannot use statements predating the Rule's effective date as a basis to prove a violation of the Rule.

statements to investors in hedge funds managed by Southridge "promising that at least 75% of their money would be invested in unrestricted, free-trading shares." *See* Complaint, ¶¶ 1, 36, 40, 44.

Defendants' intended motion will establish that Defendants are entitled to judgment as a matter of law on these claims given that the SEC cannot demonstrate a genuine issue of material fact regarding at least three requisite elements. First, as a threshold matter, to prove any of these causes of action, the SEC must prove that Defendants made "false and misleading" statements concerning the investments the Southridge funds would hold. However, the SEC *cannot* demonstrate that the defendants made a *false* statement regarding the funds' proposed holdings because, among other things, the alleged statements regarding the funds' investment objectives were aspirational statements regarding what the funds *intended* to do and the record is devoid of evidence that the Defendants either knowingly or recklessly falsely portrayed the funds' intended investment strategy when the statements were made. Indeed, the record establishes the opposite: as the SEC concedes, for most of the relevant time period Southridge's statements regarding the funds' targeted portfolio mix, which were inherently forward looking, were true at the time they were made. For example, the SEC's Complaint cites Southridge's statement from October 2005 that it "targeted" "a high degree of liquidity for investors" while, at the same time, the SEC concedes that in 2005 and 2006 the Southridge funds did "invest ... primarily in...short-term deals." Compl., ¶¶ 15-16.

For later periods, the SEC contends Southridge's statements regarding the manner in which it "strategically positioned the fund so that a high degree of liquidity is targeted for investors" were "fraudulent" because the funds "invested in relatively illiquid PIPE deals." Statements regarding Southridge's strategic "target" for its funds, however, neither "contain facts [n]or concrete promises of future performance that were specific to the relationship between [Defendants and their investors]." *DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07 Civ 318(RJS), 2009 WL 2242605, at *24 (S.D.N.Y. July 27, 2009) (citation omitted). Generalized, optimistic goals investment objectives are non-actionable as they are not the sort of statements a reasonable investor would consider important in deciding whether or not to invest. *In re TCW/DW North American Government Income Trust Sec. Litig.*, 941 F.Supp. 326, 338-9 (S.D.N.Y. Aug. 28, 1996).

Moreover, Southridge's statements regarding the liquidity of its holdings were accurate given that they were expressed explicitly in terms of certain holdings' characteristics. For example, Southridge stated that the "specific" manner by which the fund was "positioned...so that a high degree of liquidity is targeted for investors" was through holding "75% of the fund's assets to be invested in free trading securities, cash or near cash, and up to 25% is invested in restricted securities." In the intended motion, Defendants will demonstrate that there is no genuine issue of material fact whether Defendants exceeded the "25%" threshold for restricted securities.

The SEC does not appear to even contend that the threshold was exceeded. Rather than contending that the funds invested in "restricted" securities, the SEC contends the Defendants committed *fraud* by having the funds invested in "relatively illiquid PIPE deals involving convertible debentures or convertible preferred stock." However, as the intended motion will explain further, there is no genuine issue of material fact regarding whether the Defendants' knowingly or recklessly misrepresented the general liquidity profile of the funds' holdings *at the time the statements were made*. Moreover, the SEC cannot in hindsight hold Southridge responsible for subsequent events that altered the liquidity of the funds' holdings (*e.g.*, the global financial crisis of 2008, individual developments with particular holdings of the fund, etc.).

Second, the intended motion will demonstrate that even if the Commission could pinpoint a statement by the Defendants that was misleading – which it cannot – the Commission's fraud claims still fail because there is no genuine issue of material fact as to whether such a misrepresentation was material. A misrepresentation is material "'if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act].'" *S.E.C. v. Greenstone Holdings, Inc.*, 10 CIV. 1302 MGC, 2012 WL 1038570, at *5 (S.D.N.Y. Mar. 28, 2012) (quoting *Basic v. Levinson*, 485 U.S. 224, 231 (1988)). According to the Second Circuit, "[t]he touchstone of the inquiry is not whether isolated statements . . . were true, but whether defendants' representations or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered." *Halperin v. eBanker USA.com. Inc.*, 295 F.3d 352, 357 (2d Cir. 2002).

In view of the sophistication of the funds' participants, all of whom were accredited investors, there is no dispute that Southridge's statements were accurate when placed in the context of the written disclosures regarding the power of the General Partner and the risks inherent in an investment in the partnership. Moreover, all statements made regarding the investment strategy for the fund must be read against the backdrop of the operating agreements for the fund. To the extent that investors were unclear about the investment strategy of the fund, the operating agreements would have provided them with explicit information regarding the General Partner's discretion in directing the investment strategy for the fund.

For example, the 2004 Southridge L.P. Private Offering Memorandum expressly contemplates an investment portfolio consisting of micro-cap investments and an investment strategy that would remain flexible. The Memorandum states that the investment objective of the fund is:

> To achieve capital appreciation through investments, directly and indirectly, principally in the micro-cap market pursuant to the proprietary investment strategies of the General Partner. Such investments will include, but not be limited to, private placements of restricted securities issued by publicly

traded companies, exchangeable securities, long and short positions in securities of publicly traded companies, private equity and combinations of the above pursuant to the General Partner's proprietary investment strategies...[t]he success of the Partnership will depend on the ability of the General Partner to locate and analyze investment opportunities, and, once identified, to monitor the progress of the Partnership's investments in order to determine the timing of their disposition...[i]n implementing the investment program, the General Partner will seek to identify, through both fundamental and technical factors, securities which will fit its investment criteria.

The Private Offering Memorandum also provides the General Partner with full discretion regarding the investment strategies used by the Fund.

The investment strategies used by the General Partner in trading the Partnership's assets may be altered without prior approval by, or prior notice to, the Partnership and its Limited Partners if the General Partner determines that such change is in the best interest of the Partnership. Any such decision to engage in a new activity or to use other investment managers or to make investments in other investment vehicles could result in exposure of the Partnership's assets to additional risks which may be substantial.

These and other documents reviewed and signed by the funds' investors also, among other things: expressly contemplate that investments may not be immediately liquid for investors as there is no secondary public market available for the sale of securities purchased by the fund; warn that "[m]any, if not all, of the Partnership's investments may be illiquid"; and warn that the investors "could be subject to significant losses if the General Partner takes a large position in a particular security that declines in value and that cannot be liquidated without adverse market reaction."

Third, the intended motion will demonstrate that Defendants are entitled to summary judgment in their favor because the SEC has failed to adduce evidence that they acted with "intent to deceive, manipulate, or defraud; or at least knowing misconduct." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996) (citations omitted).

Mr. Hicks had no motive to commit fraud and did not benefit in any concrete way from the alleged fraud. To establish motive, the SEC must show "concrete benefits" arising out of "one or more of the false statements and wrongful nondisclosures alleged." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). "Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiff [] must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Id.* The SEC alleges only that Mr. Hicks and Southridge earned a percentage of the Funds' net assets in management fees. Compl. ¶ 31. Such an allegation – even if proven – is insufficient to demonstrate scienter.

"The desire to earn management fees is a motive generally possessed by hedge fund managers, and as such, does not suffice to allege a 'concrete and personal benefit" resulting from fraud. To accept a generalized allegation of motive based on a desire to continue to obtain management fees would read the scienter requirement out of the statute." *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 227 (S.D.N.Y. 2008) (citation omitted); *see, e.g., Acito v. IMCERA Grp.*, 47 F.3d 47, 54 (2d Cir. 1995) ("[I]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated.") (citation omitted).

The SEC's apparent theory that Mr. Hicks had motive to defraud investors is not only unsupported by any evidence, it is belied by simple common sense. Mr. Hicks was himself, indirectly, one of the largest investor in the Southridge funds and shared in all the profits and losses pro rata with other investors. Accordingly, any illiquidity would impact Mr. Hicks the same as all others and could not form the basis of a concrete and personal benefit.

### Plaintiff's Fourth Claim for Relief
The SEC's fourth claim is predicated on its allegation that Southridge "fraudulently mispriced" its investment in Fonix Corporation ("Fonix") by carrying the investment at cost. As the intended motion will demonstrate, the first major flaw (among many) in this analysis is that the valuation methodology employed was plainly stated in the limited partnership agreements and offering memoranda. (To summarize, the Fonix securities were initially restricted, and the funds' operative documents disclosed that that they should be valued at cost or at a value that the General Partner determines in its sole and absolute discretion.) There is no genuine issue of material fact regarding whether any reasonable investor could have been misled by disclosures so clear.

Second, there is no genuine issue of material fact regarding whether the Defendants *knew* the valuation of Fonix was false when made. Courts in this Circuit and others have consistently recognized that "valuing complex, illiquid instruments . . . is not a straightforward exercise." *Lighthouse Fin. Grp.*, 2012 WL 4616958, at *11 (granting defendants' motion to dismiss). As the Second Circuit explained in *Fait v. Regions Fin. Grp.*, 655 F.3d 105, 110 (2d. Cir. 2011), "management's determination of the 'fair value' of the assets . . . [is not a] matter[] of objective fact." Recognizing that estimations of value are normally subjective opinions, to allege falsity in connection with a federal securities fraud claim in this context, a plaintiff must allege that the valuation was "objectively false and disbelieved by the defendant at the time it was expressed." *Lighthouse Fin. Grp.*, 2012 WL 4616958, at *11 (quoting *Fait*, 655 F.3d at 110) (emphasis added). As the intended motion will make clear, there is *no* evidence in the record establishing either that the Fonix valuation was objectively false *or* that the Defendants "disbelieved" the valuation.

**Plaintiff's Fifth Claim for Relief**

The SEC's final claim for relief is based on the SEC's allegation that Defendants "secretly caused" two of its funds to pay approximately $5 million of legal and administrative expenses incurred by other Southridge-related funds <u>and</u> that they caused those funds to pay the monies back with "overvalued, illiquid securities rather than cash." While Southridge admits that it made an accounting error and acknowledges that the payment of certain legal fees was misallocated, there is no genuine issue of material fact regarding whether anyone at Southridge purposely misallocated fund assets to pay the expenses of other funds. (Moreover, Mr. Hicks was not aware that the newer hedge funds were financing the payment and, based on the size of his investment in the newer hedge funds, was likely one of the "victims" most effected by the misallocation.)

Nor is there evidence sufficient to establish a genuine issue of material fact that Defendants knowingly or recklessly repaid the monies with "overvalued" securities. As with the SEC's Fourth Claim for Relief, in order for the SEC to establish that Defendants fraudulently transferred "overpriced" securities, they would have to establish that the Defendants' valuation of the transferred securities was "objectively false and disbelieved by" the Defendants. There is no evidence in the record that would either support such a theory or establish a genuine triable issue of fact.

For these and reasons, Defendants respectfully request that the Court schedule a prefiling conference in order to discuss a potential motion for summary judgment and establish filing deadlines for such a motion.

Sincerely,

*John R. Downey*
John R. Downey

JRD

JK2344