UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                            :
SECURITIES AND EXCHANGE COMMISSION,         :
                                            :
                   Plaintiff,               :
                                            :        Civil Action No.:  10-cv-1685 (RNC)
          v.                                :
                                            :
SOUTHRIDGE CAPITAL MANAGEMENT LLC,          :
SOUTHRIDGE ADVISORS LLC, AND STEPHEN        :        March 22, 2013
M. HICKS,                                   :
                                            :
                   Defendants.              :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S
SECOND MOTION TO COMPEL</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 3

    I.    The SEC's Broad Rule 30(b)(6) Deposition Notice ................................ 3

    II.    The Witness' Testimony At The 30(b)(6) Deposition ........................... 4

ARGUMENT ....................................................................................................... 5

    I.    Mr. Saunders Was Adequately Prepared To Testify On The Topics Listed In The SEC's 30(b)(6) Deposition Notice ............................................. 5

        A.    Mr. Saunders Was Adequately Prepared And Responded To All Reasonable Questions Regarding Topic # 4 ............................................. 6

        B.    Mr. Saunders Was Not Obligated To Memorize Vast Amounts Of Data To Prepare For The Deposition ......................................... 9

        C.    Mr. Saunders Was Not Required To Bring Documents With Him To The Deposition ................................................................. 11

    II.    The Detailed Information Sought By Topic # 4 Is More Appropriately Obtained Through Examination Of The Access Database, Which Has Been Produced .............................................................................. 13

    III.    Further Discovery Is Particularly Inappropriate Because Topic # 4 Failed To Explain With Reasonable Particularity The Testimony Sought ............ 14

    IV.    The "Report" Prepared By Defendants At The Request Of Counsel Is Protected By The Work Product Doctrine ......................................... 15

CONCLUSION .................................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Anderson v. Domino's Pizza, Inc.*,
No. 11-cv-902 RBL, 2012 WL 1684620 (W.D. Wash. May 15, 2012) ................................13

*Arctic Cat, Inc.* v. *Injection Research Specialists, Inc.*,
210 F.R.D. 680 (D. Minn. 2002)................................................................................................11

*Banks v. Office of the Senate Sergeant-At-Arms*,
241 F.R.D. 370 (D.D.C. 2007)...................................................................................................5

*Canal Barge Co. v. Commw. Edison Co.*,
No. 98 C 0509, 2001 WL 817853 (N.D. Ill. Jul. 19, 2001) ....................................................11

*Chick-fil-A v. ExxonMobil Corp.*,
No. 08-51422-CIV, 2009 WL 3763032 (S.D. Fla. Nov. 10, 2009) ...........................................5

*Concerned Citizens of Belle Haven v. Belle Haven Club*,
223 F.R.D. 39 (D. Conn. 2004).................................................................................................11

*Costa v. Cnty. of Burlington*,
254 F.R.D. 187 (D.N.J. 2008)................................................................................................5, 6

*Crouse Cartage Co. v. Nat'l Warehouse Inv. Co.*,
No. IP02-0071-C-T/K, 2003 WL 21254617 (S.D. Ind. Apr. 10, 2003) ...................................7

*Dongguk Univ. v. Yale Univ.*,
270 F.R.D. 70 (D. Conn. 2010)................................................................................................13

*Equal Emp't Opportunity Comm'n v. Am. Int'l Grp., Inc.*,
No. 93 CIV. 6390 (PKL), 1994 WL 376052 (S.D.N.Y. Jul. 18, 1994) ................................6, 9

*Essex Builders Grp., Inc. v. Amerisure Ins. Co.*,
No. 6:04-cv-1838-Orl-22JGG, 2006 WL 1733857 (M.D. Fla. Jun. 20, 2006).........................7

*F.D.I.C. v. Wachovia Ins. Servs., Inc.*,
No. 3:05 CV 929 (CFD), 2007 WL 2460685 (D. Conn. Aug. 27, 2007) .........................16, 17

*Gen-Probe Inc. v. Becton, Dickinson & Co.*
No. 09cv2319 BEN NLS, 2012 WL 3762447 (S.D. Cal. Aug. 29, 2012)................................6

*Gould Inc. v. Mitsui Mining & Smelting Co.*,
825 F.2d 676 (2d Cir.1987).......................................................................................................16

## TABLE OF CONTENTS
(continued)

**Page**

*In re Linerboard Antitrust Litig.*,
   237 F.R.D. 373 (E.D. Penn. 2006) ........................................................................17

*Krasney v. Nationwide Mut. Ins. Co.*,
   No. 3:06 CV 1164 (JBA), 2007 WL 4365677 (D.Conn. Dec. 11, 2007) ...............14

*Sporck v. Peil*,
   759 F.2d 312 (3d Cir. 1985)..................................................................................16

*Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.,*
   236 F.R.D. 524 (D. Kan. 2006)........................................................................14, 15

*U.S. ex rel. Fago v. M & T Mort. Corp.*,
   235 F.R.D. 11 (D.D.C. 2006)............................................................................6, 10

*United States v. Pepper's Steel & Alloys, Inc.*,
   132 F.R.D. 695 (S.D. Fla. 1990)...........................................................................16

*Wolfe v. Ford Motor Co.*,
   No. 06-1217-MLB, 2008 WL 294547 (D. Kan. Feb 1, 2008)................................13

## FEDERAL RULES

Fed. R. Civ. P. 26(b)(3)...........................................................................................17

Fed. R. Civ. P. 30(b)(5)...........................................................................................11

Fed. R. Civ. P. 30(b)(6)..................................................................................... passim

Defendants Southridge Capital Management LLC, Southridge Advisors LLC (collectively "Southridge"), and Stephen M. Hicks, through their undersigned counsel, submit this memorandum of law in opposition to the Second Motion to Compel filed by Plaintiff Securities and Exchange Commission ("SEC").

## INTRODUCTION

The SEC's Rule 30(b)(6) deposition notice required Defendants to prepare for twenty-eight broad and extensive topics.  Defendants objected to several topics as not defined with reasonable particularity and requiring an improper memory test by a witness.  Despite the deficiencies of the Rule 30(b)(6) notice, and subject to their objections, Defendants produced two separate witnesses for a full seven hours of testimony.  Of the twenty-eight topics on which Defendants were deposed, the SEC moves to compel additional discovery on only Topic # 4, which requests testimony regarding "[t]he investments/holdings of each sleeve of the [sic] Southridge Partners and Southshore Capital for each month between January 2004 and December 2008."  Despite the fact Defendants' witness testified about where this information was located, in what form, and how to access it, the SEC complains that the witness had not memorized each of the investment positions from 2004 through 2008.  For the reasons discussed below, Defendants were adequately prepared to respond to this topic and no further discovery is warranted.

First, the SEC fails to establish that Defendants' witness, Thomas Saunders, was not adequately prepared to testify as required by the Federal Rules.  Mr. Saunders spent more than thirty hours preparing for his deposition over a two week period and testified extensively about how to locate the information regarding an investor's holdings.  Here, the number of discrete holdings by investors during 2004 through 2008 was more than 94,000.  It is simply unrealistic to think Mr. Saunders would have memorized this type of detail.

Oral Argument Requested

The SEC further complains that Defendants generated a "report" of investor holdings that was sent to counsel but that Mr. Saunders did not review.  Contrary to the SEC's apparent impression, this "report" did not contain the positions of all investors in the funds.  Defendants' counsel requested a discrete set of information to assess the reasonableness of producing a witness to testify regarding Topic # 4.  That Mr. Saunders did not review these documents says nothing about his preparedness.

Second, because of the volume of information at issue, the discovery sought by Topic # 4 is more appropriately sought through other discovery devices, such as accessing the database in which investor information is held, which Defendants have already produced.  Mr. Saunders explained in detail during his deposition how to access information in the database.

Third, additional discovery in this situation is particularly inappropriate because Topic # 4 was not defined with reasonable particularity under the Federal Rules.  The SEC cannot issue an overbroad deposition notice and then complain that the witness does not recall all minute detail in a company's records.

Finally, the "report" is protected by the work product doctrine.  Counsel selected the information to be used in the report and it was produced in preparation for trial.  Mr. Saunders never refused to testify based on an assertion of privilege.  Because the SEC can easily recreate the information produced to Defendants' counsel from the Access database, the SEC is unable to show a substantial need for the information from Defendants' counsel.

Accordingly, the Court should deny the SEC's motion to compel in its entirety.

## **BACKGROUND**

I.     The SEC's Broad Rule 30(b)(6) Deposition Notice.

Less than a month before the January 30, 2013 close of deposition discovery, the SEC

sent Defendants a notice for the Rule 30(b)(6) deposition of Southridge Advisors LLC and

Southridge Capital Management LLC.  (*See* March 1, 2013 Declaration of Marc J. Jones ("Jones

Decl."), ECF Doc. 70-2, Exhs. 1-2.)  The notice required Defendants to designate a deponent

knowledgeable on twenty-eight general topics, including subparts.  (*Id*.)  For example, Topic #2

requires the witness to testify on the "creation and maintenance" of every accounting and

investment record at Southridge.  (*Id*. at Topic #2.)  Topic #1(d) requires the witness to recall

hundreds of transaction when it asks for all "[c]ontributions to the Legal Reserve Account and

Fund Operating Account by each of the Southridge Funds."  (*Id*. at Topic #1(d).)  Topic 1(e)

requires a witness to recall any "[p]ayment of legal expenses" after the Legal Reserve Account

began to run low on funds.  (*Id*. at Topic #1(e).)  Four topics really give no direction at all since

they use the overreaching "including, but not limited to" language.  (*Id.* at Topics 1-3, and 6.)  Of

these topics, the SEC now claims that Mr. Saunders, the witness designated by Defendants, was

not knowledgeable on only one of these, Topic # 4, which requests: "[t]he investments/holdings

of each sleeve of the Southridge Partners and Southshore Capital for each month between

January 2004 and December 2008…."  (*Id*. at Topic # 4.)

Defendants objected that several of the Rule 30(b)(6) topics did not describe with

reasonable particularity the matters for examination because they call "for a . . . 'memory

contest' and purport to require a witness to testify regarding vast amounts [of] data that could not

reasonably or practically be recalled."  (*See* Jones Decl., Exh. 3.)  In particular, Defendants

objected to the SEC's fourth topic, because it "purports to require that a witness recall 'the

investment/holdings of each sleeve of the [sic] Southridge Partners and Southshore Capital for

-3-

each month between January 2004 and December 2008.'"  Defendants informed the SEC that
"[t]here are dozens of individual accounts across the Southridge Partners and Southshore Capital
funds.  In addition, the funds were continually investing in new transactions and redeeming
investors throughout this period."  (*Id*.)

The SEC never issued a revised notice narrowing the topic or provided any additional
guidance to Defendants as to the particular matters on which it would be questioning Defendants.

II.     The Witness' Testimony At The 30(b)(6) Deposition.

In preparation for the deposition pursuant to Rule 30(b)(6), Mr. Saunders spent over
thirty hours preparing over a two-week period.  (*See* Declaration of Anthony Gill ("Gill Decl.")
¶ 2, Exh. 1, Transcript of Thomas Saunders ("Saunders Tr.") at 11:18-24.)  Mr. Saunders also
reviewed many documents including ledgers, investor statements, documents previously
produced to the SEC, documents out of the Southridge Access Database[1], and discovery requests
and responses in preparation for the deposition.  (*Id*. at 10:22-13:12.)  Finally, Mr. Saunders
spent time speaking with other employees of Defendants, including the accounts payable clerk,
assistant controller, and CEO.  (*Id*. at 10:22-11:6.)

The SEC's questioning of Mr. Saunders regarding Topic # 4 consisted of three pages in
the transcript.  (*Id*. at 214:24-217:24.)  Mr. Saunders never refused to answer any question on the
basis that a document containing the information had been previously produced or on the basis of
privilege.  Mr. Saunders testified that a "report" had been generated from the Access database
regarding Topic # 4 and sent to Defendants' counsel.  The "report" is not a comprehensive detail
of investor positions in the funds.  (Gill Decl., ¶ 7.)  Rather, counsel requested a specific set of
information to assess the reasonableness of responding to Topic # 4.  (*Id*.)

---

[1] The Access database was created by Southridge to, among other things, account for investors' positions in the
funds and contains shareholder ledgers and tables.  (Saunders Tr. at 160:13-163:12.)

## ARGUMENT

I.  Mr. Saunders Was Adequately Prepared To Testify On The Topics Listed In The SEC's 30(b)(6) Deposition Notice.

The SEC argues that Defendants failed to comply with their Rule 30(b)(6) obligations because Mr. Saunders was kept "in the dark" regarding Topic # 4.  (Pl's Mot. at 3-4.)  The SEC claims that a "report" generated by Defendants contained all the information required by Topic # 4 and Mr. Saunders' failure to familiarize himself with that report fell short of Defendants' obligations to prepare a proper Rule 30(b)(6) witness.  (*Id.*)  To the contrary, Mr. Saunders was adequately prepared to answer all reasonable questions regarding the Rule 30(b)(6) topics for which he was designated, including Topic # 4.  The testimony demonstrates that the SEC did not test Mr. Saunders's knowledge regarding Topic # 4 and that Mr. Saunders completely answered all questions asked.  Instead, the SEC's argument reduces to the fact that Mr. Saunders did not memorize tens of thousands of specific holdings by the individual investors in the funds.  No case requires a witness to have such a photographic memory.

Courts have repeatedly held that a "rule of reason" applies to the preparation of and detail provided by a Rule 30(b)(6) witness.  *E.g.*, *Chick-fil-A v. ExxonMobil Corp.*, No. 08-51422-CIV, 2009 WL 3763032, at *12 (S.D. Fla. Nov. 10, 2009) (citation omitted) (noting "rule of reason" in 30(b)(6) deposition and finding witness adequately prepared); *Banks v. Office of the Senate Sergeant-At-Arms*, 241 F.R.D. 370, 373 (D.D.C. 2007) (same).  Indeed, "[s]imply because defendant[s'] witness could not answer every question posed to him does not equate to the fact that defendant[s] did not satisfy [their] obligation to prepare [their] 30(b)(6) witness."  *Costa v. Cnty. of Burlington*, 254 F.R.D. 187, 190 (D.N.J. 2008) (citations omitted) (finding witness adequately prepared for Rule 30(b)(6) deposition).

This rule of reason is particularly applicable where a witness is asked to memorize and recite minute details. Courts have found that "there must be a limit to the specificity of the information the deponent can reasonably be expected to provide" during a Rule 30(b)(6) deposition. *E.g.*, *U.S. ex rel. Fago v. M & T Mort. Corp.*, 235 F.R.D. 11, 24-25 (D.D.C. 2006). The same Court found that it was not reasonable to expect a 30(b)(6) deponent to "testify as to the loan numbers (and whatever other identifying information about which plaintiff would question the witness) for sixty-three different loans." *Id.* Similarly, another court found "[i]t is not reasonable to expect any individual to remember every fact in an EEOC investigative file." *Equal Emp't Opportunity Comm'n v. Am. Int'l Grp., Inc.*, No. 93 CIV. 6390 (PKL) RLE, 1994 WL 376052, at *3 (S.D.N.Y. July 18, 1994); *see also Costa*, 254 F.R.D. at 191 ("[i]t is simply impractical to expect defendant's 30(b)(6) witness to know the intimate details of numerous officers' contact with the decedent"). Likewise, here, Mr. Saunders was not required to offer testimony beyond the "rule of reason."

A.     Mr. Saunders Was Adequately Prepared And Responded To All Reasonable Questions Regarding Topic # 4.

Mr. Saunders prepared diligently for his Rule 30(b)(6) deposition. In preparing, Mr. Saunders spoke with both the Southridge accounts payable clerk, the assistant controller, and Mr. Hicks. (Saunders Tr. at 10:22-11:6.) Mr. Saunders also reviewed numerous documents including shareholder ledgers, investor statements, and documentation from Southridge's Access database system. (*Id*. at 11:25-12:10.) Mr. Saunders spent over thirty hours preparing for the deposition over a two-week period. (*Id.* at 11:18-24.)

Courts have found levels of preparation much less than what Mr. Saunders did adequate for a Rule 30(b)(6) deposition. *See Gen-Probe Inc. v. Becton, Dickinson & Co.* No. 09cv2319 BEN NLS, 2012 WL 3762447, at *4 (S.D. Cal. Aug. 29, 2012) (holding that talking to outside

patent counsel for one and a half to two hours, reviewing documents, and discussing the matter
with litigation counsel was adequate preparation as required by Rule 30(b)(6)); *Essex Builders
Grp., Inc. v. Amerisure Ins. Co.*, No. 6:04-cv-1838-Orl-22JGG, 2006 WL 1733857, at *3-4
(M.D. Fla. June 20, 2006) (holding that because the Rule 30(b)(6) witness "had read the claims
file, the policy at issue, and had a four hour discussion with … counsel" that the witness had
adequately prepared for the deposition); *Crouse Cartage Co. v. Nat'l Warehouse Inv. Co*., No.
IP02-0071-C-T/K, 2003 WL 21254617, at *6 (S.D. Ind. Apr. 10, 2003) (preparation consisting
of review of old documents, lease agreement, purchase and sales agreement, and a brief meeting
with an attorney satisfied Rule 30(b)(6) requirements).

      Mr. Saunders was also prepared to answer reasonable questions on Topic # 4.  As Mr.
Saunders explained, detailed information about the holdings of each investor in the Southridge
funds is contained in the Access database.  (Saunders Tr. at 210:9- 211:19)  This database was
produced in its entirety to the SEC during discovery.  (Gill Decl. ¶ 6, Exh. 4.)  Mr. Saunders was
prepared to give detailed answers regarding the form of the reports that could be obtained out of
Access and how one would generate those reports.  For example, the SEC asked Mr. Saunders
"[i]s there a way to go back in on a month-by-month historical basis and determine what asset
classes a particular investor is invested in." (Saunders Tr. at 213:9-14.)  To which, Mr. Saunders
provided the following response:

> A. Yes, there is also -- another way to do it would be if you saw
> that investor X, you wanted to see was Technest that he had, you
> could go back in and look at the monthly accounting report, either
> the one that's saved in the accounting files or the ones you can
> generate off of Access, and say, okay, we have six deals open for
> this, okay, and the beginning NAV on this was, you know, X
> amount per each one, and then you could go back here and say, oh,
> investor X, he owns 1.9 – 1.09 percent of this deal, which he will
> forever own. This value obviously is going to change over time,
> but, in essence, the way -- the way Tanya explained it to me was

> originally they come up with these amounts, so it's these amounts
> divided by the total comes up with these percentages, so it works
> off of the dollar amount, but it's the same thing. So you could look
> at this deal, if this was one of the deals of Technest, and say, okay,
> he owns 1.09 percent of this, you know, there is a thousand dollars
> in here, so he owns $10.90 or whatever it is.

(*Id*. at 213:15-214:14.)

Similarly, Mr. Saunders testified fully about another report generated from Access to

track investor holdings called the Gross Asset Report:

> Q. . . . Is there a way using any of the records of -- at Southridge to
> establish what a particular investor is holding in his or her account
> -- his, her or its account on a monthly basis?
> A.   There is the -- there is the gross asset report that can be
> generated out of -- out of Access.
> Q.   Okay.   And is it possible to generate that report historically?
> And by that I mean if sitting here in 2013 I wanted to go back and
> see in 2006 what investor X had at the end of November, is that
> possible?
> A.   Yes.

(*Id*. at 209:19-210:8.)  Mr. Saunders went on to describe with detail how one would generate the

Gross Asset Report from Access.  (*Id*. at 210:9-211:19.)  Indeed, when the SEC asked Mr.

Saunders how he would generate the "report" at issue on Topic # 4, Mr. Saunders referred back

to his prior testimony: "as I described earlier, to produce a portfolio report you just go on to the

Access database, go into the report section, do, you know, a gross asset report and put in the

fund, the month and the year."  (*Id*. at 217:14-21.)

What the SEC fails to realize, because they did not ask, is that the "report" Mr. Saunders

referenced in his testimony regarding Topic # 4 was simply a specific selection requested by

Defendants' counsel of the reports Mr. Saunders otherwise testified about during his deposition.[2]

---

[2] Contrary to what the SEC may believe this "report" contains, it is not a consolidated summary of all holdings for all investors.  Instead, the selection of "reports" was requested so that counsel could assess whether Topic # 4— among others—met the reasonable particularity requirement of Rule 30(b)(6).  (Gill Decl., ¶ 7.)  It did not, and as a result Defendants objected to Topic # 4 prior to the deposition.  (*See* Jones Decl., Exh. 3.)

After learning that a "report" had been created and that Mr. Saunders had not reviewed that specific "report," the SEC moved on in its questioning.  In total, the SEC spent a mere three pages of the transcript investigating Mr. Saunders's knowledge of investor holdings regarding Topic # 4.  (*Id*. at 214:24-217:24.)  In doing so, the SEC cannot now argue, after the fact, that Mr. Saunders was not prepared to testify on Topic # 4.

It is undisputed that in preparation for the deposition Mr. Saunders reviewed the Access-generated reports that would enable him to answer questions regarding Topic # 4, as well as other topics.  (*See Id*. at 11:25-12:10 (in preparation for 30(b)(6) reviewed shareholder ledgers, investors statements, and the Southridge Access database, among other documents).)  There is no merit to the SEC's assertion that Mr. Saunders was kept "in the dark."  To the contrary, Mr. Saunders had full knowledge of the methods for obtaining and generating the data that the SEC sought on all topics.  Indeed, the SEC has not moved to compel testimony on any other topic in the 30(b)(6) deposition, acknowledging Mr. Saunders's preparedness.[3]  Rather, reduced to its core, the SEC's complaint is that Mr. Saunders did not memorize the specific holdings of all investors in the Southridge Partners and Southshore Capital funds.  This is not a feat the law required of Mr. Saunders.

   B.   <u>Mr. Saunders Was Not Obligated To Memorize Vast Amounts Of Data To Prepare For The Deposition</u>.

It is not reasonable for the SEC to demand that Mr. Saunders memorize all of the detail regarding each investor's "sleeve."  *See EEOC*, 1994 WL 376052, at *3 ("Rule 30(b)(6) is not

---

[3] The SEC does not dispute that Mr. Saunders was prepared to testify on the twenty-five other topics, including subparts.  To testify on these topics, Mr. Saunders had to have a broad and detailed grasp of the information.  For example, Topic # 2 requested the witness to testify on the "creation and maintenance" of every accounting and investment record at Southridge, Topic # 1(d) required the witness to recall hundreds of transaction when it asks for all "contributions to the Legal Reserve Account and Fund Operating Account by each of the Southridge Funds," and Topic #1 (e) required the witness to recall any "payment of legal expenses" after the Legal Reserve Account began to run low on funds. (Jones Decl. Exh. 1,2, at Topics # 1-2.)

designed to be a memory contest."). This is particularly true where, as here, all of this detail has already been produced to the SEC.

In order to understand the scope of the SEC's request, it is useful to quantify the volume of information at issue. In the normal course of business, Southridge generated reports called Gross Asset Reports ("GAR") that list an investor's holdings in a particular month. (Saunders Tr. at 209:19-211:11.) These reports are generated out of the Access database, which was previously produced to the SEC. Further, several individual GARs were produced to the SEC in discovery. (*E.g.*, Gill Decl. ¶ 3, Exh. 2.) These GARs demonstrate that an investor often had upwards of sixteen positions in his or her portfolio. (*Id.*)[4] The Southridge Partners and Southshore Capital funds had a total of ninety-eight investor accounts during the relevant period. (Gill Decl., ¶ 4, Exh. 3.)[5] Finally, Topic # 4 covers a sixty month period. (Jones Decl. Exh. 1-2, at Topic # 4.) Therefore, the SEC's request demanded that Mr. Saunders memorize the following:

|   | | |
|---:|---:|---|
| | 16 | (approximate number of positions in an investor's portfolio per month (*see* Gill Decl., Exh. 2)) |
| | 98 | (total investors in Southridge Partners and Southshore Capital funds (*id.*, Exh. 3)) |
| x | 60 | (months for which SEC demanded information in Topic # 4 of Rule 30(b)(6) notice (Jones Decl., Exh. 1)) |
| = | 94,080 | (total number of discrete positions held by investors) |

As discussed above, courts consistently find memory tests such as remembering 94,050 "individual" positions to be unreasonable for a 30(b)(6) witness. *See e.g., U.S. ex rel. Fago*, 235 F.R.D. at 24-25.

---

[4] The gross asset reports have been redacted to remove the name of the limited partner as well as the name of the companies in which an investment was held.
[5] This document reflects the unique investor numbers given to each investor in the funds. The names of the individual investors have been redacted.

The SEC cites only one case in support of its position that Mr. Saunders was required to memorize 94,080 discrete positions.  (*See* Pl's Mot. at 4.)  This case, however, does not require a party to memorize vast amounts of data.  *See Concerned Citizens of Belle Haven v. Belle Haven Club*, 223 F.R.D. 39, 43 (D. Conn. 2004).  In *Concerned Citizens*, the defendants had previously produced a database containing facts responsive to the Rule 30(b)(6) notice, but had then denied the accuracy of information in the database.  *Id.*  Because defendants had denied the accuracy of the facts within the document, the court required the witness to review the database—not memorize it—and testify on admissions information over a twenty-four year span.  *Id.*  There is no indication from the case that the witness was required to have perfect recall of all facts from the twenty-four year time span.

Mr. Saunders was adequately prepared to testify regarding Topic # 4.  That preparation did not require him to memorize 94,080 individual positions.

C.    Mr. Saunders Was Not Required To Bring Documents With Him To The Deposition.

The SEC's argument that Mr. Saunders had an obligation to bring the "report" to the deposition as a demonstrative aid likewise has no merit.  (Pl's Mot. at 4-5.)  Although a party may include in a deposition notice a request to bring documents to the deposition, the SEC included no such request here.  *See* Fed. R. Civ. P. 30(b)(5).  Moreover, where such requests are made, they must be "few and simple" as well as "closely related to the oral examination."  *See Canal Barge Co. v. Commw. Edison Co.*, No. 98 C 0509, 2001 WL 817853, at *4-5  (N.D. Ill. Jul. 19, 2001) (striking rider to 30(b)(6) notice under Rule 30(b)(5) that requested the deponent produce "broad categories of written documents").  The SEC's own case law explains that where a party requests documents be brought to a deposition, the requests must be "expressly tailored to the deposition's purposes."  *Arctic Cat*, *Inc.* v. *Injection Research Specialists, Inc.*, 210 F.R.D.

680, 686 (D. Minn. 2002).  This is because a "Rule 30(b)(6) deponent is not expected to be

clairvoyant, so as to divine the specific questions that could require the assist of a demonstrative

aid."  *Id*.

 In this case, Defendants have produced nearly seventy-thousand pages of documents.

(Gill Decl., ¶ 5.)  This does not include the library of information contained in the Access

database that has also been produced.  (Gill Decl. ¶ 6, Exh. 4.)  Although the SEC frames its

argument as merely requesting a limited "demonstrative" exhibit at the deposition, the scope of

the SEC's request is much more.  In addition to Topic # 4, the 30(b)(6) notice required testimony

on issues such as:

- The creation and maintenance of accounting and investment records at Southridge including but not limited to: shareholder ledgers, general ledgers, trial balances, financial statements, fund breakouts of the general ledger, and an explanation (including the source and meaning of each category of data) of Southridge's general ledger and shareholder ledger accounts.
- The Access database used by Southridge, including, but not limited to:  (a).  What data is contained in each table in the Access Database, the meaning and usage of each field in those tables, and the procedures for updating that data during the time period described in the Complaint.

(Jones Decl., Exh. 1, at Topic # 2, 6a.)  In total, Requests 2, 4, and 6—among others—request

detailed information concerning almost any financial report created by Southridge since 2004.  If

the SEC's argument is taken literally that Mr. Saunders was required to bring with him

documents that contained all minute details of these reports, he would have been required to

bring bankers boxes of documents with him.  The Federal Rules do not require a witness to bear

such a burden, especially where the documents have already been produced.

 Mr. Saunders complied with his obligations as a witness under Rule 30(b)(6).  As a

result, the SEC's motion to compel should be denied.

II.     The Detailed Information Sought By Topic # 4 Is More Appropriately Obtained Through
        Examination Of The Access Database, Which Has Been Produced.

        The SEC argues that a witness may not "resist" answering questions in a 30(b)(6)

deposition only because the substance of the information has been previously produced in

documents.  (Pl's Mot. at 5.)  The SEC's argument, however, is a red herring.  Mr. Saunders did

not "resist" answering any questions on the basis that a document had been previously produced.

The SEC did not question Mr. Saunders regarding any investor's GAR, despite the fact many

have been produced.  (*E.g.*, Gill Decl. ¶ 3, Exh. 2.)  Rather, the issue is that it was not

appropriate for the SEC to demand that Mr. Saunders have at the deposition detail concerning

94,080 individual investor positions, when that information is better explored through other

discovery devices.

        As this Court has recognized, a Rule 30(b)(6) deposition "ought to be productive and not

simply an excuse to seek information that is already known . . . Where the notice seeks

information which could more easily be obtained from another source, the court may refuse to

allow that topic to be the subject of a 30(b)(6) deposition."  *Dongguk Univ. v. Yale Univ.*, 270

F.R.D. 70, 74 (D. Conn. 2010) (internal quotations and citations omitted); *see also Anderson v.

Domino's Pizza, Inc.*, No. 11-cv-902 RBL, 2012 WL 1684620, at *5 (W.D. Wash. May 15,

2012) (denying motion to compel further testimony on 30(b)(6) topic because witness not

required to review marketing policies which have been available to plaintiffs through requests

for production); *Wolfe v. Ford Motor Co*., No. 06-1217-MLB, 2008 WL 294547, at *1-2 (D.

Kan. Feb. 1, 2008) (finding that the information requested in plaintiff's 30(b)(6) notice is

unreasonably cumulative and can "be obtained by a review of the documents previously

produced . . . a source less burdensome and/or less expensive").

Here, the SEC appears to have viewed Mr. Saunders's deposition as an opportunity for Defendants to list every position held by every investor.  Such a request is duplicative and burdensome.  The far more efficient method for obtaining this information is by reference to the Access database, which has been produced.  (*See* Gill Decl. ¶ 6, Exh. 4.)  Moreover, nothing prevented the SEC from questioning Mr. Saunders about documents in the SEC's possession regarding an investor's position or asking Mr. Saunders how those reports could be generated— which is exactly what Mr. Saunders testified to.  (*See* Saunders Tr. at 209:19-214:14.)  Instead, the SEC was unprepared.  Therefore, the SEC's motion to compel should be denied.

III.   <u>Further Discovery Is Particularly Inappropriate Because Topic # 4 Failed To Explain With Reasonable Particularity The Testimony Sought.</u>

The SEC's Rule 30(b)(6) notice failed to describe Topic # 4 with the reasonable particularity required by the Federal Rules.  A deposition notice under Rule 30(b)(6) must "describe with reasonable particularity the matters for examination."  Fed. R. Civ. P. 30(b)(6). The concept of reasonable particularity requires that the deposition topics be narrowly tailored such that a witness can, in practical terms, prepare for and respond at the deposition. "Thus, to allow the Rule to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute."  *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.,* 236 F.R.D. 524, 528 (D. Kan. 2006).

This Court has not hesitated to protect parties from Rule 30(b)(6) requests that are overly broad or unfocused.  *See Krasney v. Nationwide Mut. Ins. Co*., No. 3:06 CV 1164 (JBA), 2007 WL 4365677, at *3-4 (D. Conn. Dec. 11, 2007) (issuing protective order).  A protective order is particularly appropriate where the notice requests testimony on broad topics, the party has already produced thousands of documents on the topic, and numerous witnesses have already

been deposed.  *Id.* at *4 (*citing F.D.I.C. v. Wachovia Ins. Servs., Inc.*, No. 3:05 CV 929 (CFD), 2007 WL 2460685, at *3 (D. Conn. Aug. 27, 2007)).

Topic # 4 does not meet the standard of reasonable particularity.  Prior to the deposition, Defendants objected in a January 28, 2013 letter that Topic # 4—among others—was improper under Rule 30(b)(6).  (*See* Jones Decl. Exh 3.)  Specifically regarding Topic # 4, Defendants objected that the request: (1) is vague given that the term "sleeve" is undefined and a term not used by the defendants; and (2) fails to establish with "painstaking specificity" the particular subject area on which it intends to question the witness.  (*See id.* at 2.)  As demonstrated above, Topic # 4 refers to an enormous volume of information.  There are ninety-eight different individual accounts across the Southridge Partners and Southshore Capital funds and each of the funds were continually investing in and selling securities throughout the sixty month period at issue.  (Gill Decl. ¶¶ 3-4, Exhs. 2-3.)  Requesting a witness to testify generally regarding this information is not reasonably particular.

Given the failure of the SEC to describe Topic # 4 with reasonable particularity and the thorough testimony already provided, it would be inappropriate to require further discovery.  Therefore, the SEC's motion to compel should be denied.

IV.    The "Report" Prepared By Defendants At The Request Of Counsel Is Protected By The Work Product Doctrine.

The SEC argues that the "report" is also not protected by the work product doctrine because (1) it was generated from the Access database, and (2) the facts in the "report" are properly the subject of testimony.  (Pl's Mot. at 5-6.)  The SEC's argument is, however, again a red herring.  Defendants did not prevent Mr. Saunders from testifying regarding the holdings of individual investor accounts because that information is protected by the work product doctrine.  Mr. Saunders was free to testify regarding the particular information of an investor's holdings,

had the SEC asked any such questions.  Rather, as described above, the "report" is a selection of information requested by Defendants' counsel to assess the reasonableness of the SEC's 30(b)(6) topic. (*See* Gill Decl. ¶ 7.)  As a result, the "report" is protected by the work product doctrine and because the same information can be generated from the Access database produced to the SEC, the SEC is unable to show any undue hardship in obtaining the information.

Documents collected by counsel in preparation for a deposition are protected by the work product doctrine.  In *Sporck*, the court held that documents selected by counsel for the witness in an upcoming deposition were protected because disclosure of the documents would reveal counsel's selection process and therefore his mental impressions.  *Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985) (acknowledged by the Second Circuit in *Gould Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 (2d Cir.1987) and by this Court in *F.D.I.C.*, 241 F.R.D. at 106); *see also United States v. Pepper's Steel & Alloys, Inc.*, 132 F.R.D. 695, 698 (S.D. Fla. 1990) (holding that "opinion work product may be reflected in something as subtle as the act of selecting or ordering documents because this may reflect an attorney's opinion as to the significance of those documents in the preparation for his case"); *F.D.I.C.,* 2007 WL 2460685, at *5 (requiring party to reformulate its deposition topics because the topics were "calculated to discover properly protected opinions, mental impressions, and strategy of plaintiff's counsel" and party failed to make "a showing sufficient to overcome the immunity that is accorded ordinary work product").

Here, Defendants' counsel requested that its client generate certain information that would allow counsel to determine the scope of information at issue in Topic # 4 and the reasonableness of producing a witness to respond to the topic.  (Gill Dec. ¶ 7.)  While this information was generated out of the Access database, the specific information gathered was not "all" information regarding investors, but rather reflected the request of counsel for a subset of

information.  (*Id.*)  The decision of what information to request reflects counsel's mental impressions and strategy.  While the underlying facts themselves are not privileged, the selection of facts chosen by counsel is protected.

The SEC's cited case law in inapposite here.  (Pl's Mot. at 6.)  This is not a situation where Mr. Saunders was shown a document requested by counsel and based on counsel's involvement, refused to testify about its contents.  Rather, Mr. Saunders was fully familiar with the form and process for gathering the information requested by the SEC, but had no obligation to attempt and memorize 94,000 separate investor positions.  Mr. Saunders never refused to answer any of the SEC's questions on the basis of privilege.

Finally, the SEC cannot show it "has substantial need for the materials to prepare and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3).  The SEC is easily able to obtain the "report" by accessing the database and filtering the fields as Mr. Saunders testified.  Therefore, Defendants should not be required to produce counsel's work product.  *See In re Linerboard Antitrust Litig.*, 237 F.R.D. 373 (E.D. Penn. 2006) (denying motion to compel production of work-product information raised in 30(b)(6) deposition because among other reasons, there was no showing that the party could not obtain the information from other sources and witness had spent substantial time preparing for the deposition); *F.D.I.C.*, 241 F.R.D. at 107 ("[i]t may be argued that, if the deposing attorney already has received the documents during the litigation, there is no reason to order their production a second time, for the only purpose this would serve would be to disclose, indirectly, the mental impressions of the attorney who selected the documents to review with the witness").

## <u>CONCLUSION</u>

For all the reasons discussed above, the Defendants respectfully request the Court deny the SEC's second motion to compel its entirety.

Respectfully Submitted,

Dated:  March 22, 2013
      Washington, DC

/s/ Anthony Gill_____
Anthony Gill (phv04483)
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4562
anthony.gill@dlapiper.com

Nicolas Morgan (phv05106)
Patrick Hunnius (phv05693)
Stephanie Smith (phv05624)
2000 Avenue of the Stars, Suite 400
North Tower
Los Angeles, California 90067
(310) 595-3146
nicolas.morgan@dlapiper.com
patrick.hunnius@dlapiper.com
stephanie.smith@dlapiper.com

John R. Downey (ct13028)
Rome McGuigan, P.C.
One State Street
Hartford, CT 06103
(860) 549-1000
jdowney@rms-law.com

## <u>CERTIFICATION OF SERVICE</u>

   I hereby certify that on March 22, 2013, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this document through the court's CM/ECF System.


       By:  /s/ Anthony Gill
          Anthony Gill (phv04483)
          DLA Piper LLP (US)
          500 Eighth Street, NW
          Washington, DC 20004
          (202) 799-4562
          anthony.gill@dlapiper.com


WEST\240724389.2