```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT
```

SECURITIES AND EXCHANGE          :
COMMISSION,                      :
                                 :
    Plaintiff,                  :
                                 :
v.                               :   Case No. 3:10-cv-01685 (RNC)
                                 :
SOUTHRIDGE CAPITAL MANAGEMENT,   :
LLC, SOUTHRIDGE ADVISORS LLC,    :
and STEPHEN M. HICKS,            :
                                 :
    Defendants.                 :

<u>RULING AND ORDER</u>

    In this action brought by the Securities Exchange Commission, intervenor Idea Capital Partners, LLC ("ICP") has moved for reconsideration of an order freezing the assets of defendant Stephen Hicks and staying ICP's litigation against him in state court.  For reasons discussed below, the motion for reconsideration is denied.

I. <u>Background</u>

    The SEC brought this case in 2010 against Hicks and two entities he managed: Southridge Capital Management, LLC, and Southridge Advisors LLC (collectively, "Southridge").  In 2016, summary judgment was granted to the SEC.  After an evidentiary hearing on remedies, the SEC obtained a final judgment requiring the defendants to pay approximately $7.8 million in disgorgement and prejudgment interest and requiring Hicks to pay a civil penalty of $5 million.

In November 2018, the SEC moved for an order to show cause why Hicks should not be held in civil contempt and for an expedited asset freeze.  The SEC represented that Hicks had not made any payments on the judgment and was continuing to indulge in an extravagant lifestyle while using his wife and various corporate entities to hide his assets.  The Court granted the motion, scheduled a show cause hearing, and entered an order freezing Hicks's assets ("Order Freezing Assets").

Prior to the show cause hearing, the parties reached a resolution.  Hicks agreed to begin making payments toward the judgment; the SEC agreed to modifications of the asset freeze to provide for Hicks's living and business expenses and to preserve certain property interests of non-party Fairfield County Bank.  In accordance with the parties' agreement, the Court continued the contempt hearing and entered a modified asset-freeze order ("Modified Freeze Order"), which remains in effect.

The Modified Freeze Order states that this Court has jurisdiction over the subject matter of the action and over Hicks; that the asset freeze was intended "to preserve the status quo and prevent the dissipation of assets by Hicks in his individual capacity or by and through his nominees and other third parties"; and that "[t]he Order Freezing Assets remains in place on all monies and assets including, but not limited to, those held by third parties or found in all accounts . . . held

in the name of, for the benefit of, or over which account authority is held by" Hicks.  The Modified Freeze Order further provides that "[a]ny person or entity receiving notice of this Order holding such monies and assets described above shall hold and retain them within their control and prohibit the withdrawal, removal, transfer or other disposal of any such funds or other assets except as ordered by this Court herein."  Finally, it specifies that the Court "shall retain jurisdiction over this action for the purpose of implementing and carrying out the terms of all orders and decrees, which may be entered herein and to entertain any suitable application or motion for additional relief within the jurisdiction of this Court."

In January 2019, the SEC filed a motion calling on this Court to stay state-court litigation brought by ICP against Hicks.  The state court action was based on ICP's rights in a stipulated judgment it had purchased from a defrauded investor.  The stipulated judgment, dated September 2016, resulted from a state-court action brought by the investor against Hicks in 2013.

The SEC's motion was filed in the wake of a ruling by the state court earlier that month granting ICP an ex parte prejudgment remedy against Hicks, his wife, the Southridge entities, and other corporate entities Hicks allegedly used to shield his assets.  In its application to the state court, ICP

3

cited the Modified Freeze Order and labeled the SEC "a competing judgment creditor." The state court granted ICP the right to attach or garnish $3 million of the state-court defendants' property. Shortly thereafter, ICP served a "certificate of attachment/garnishment" on Fairfield County Bank, resulting in the Bank freezing accounts created after entry of the Modified Freeze Order to allow payments of Hicks's business expenses as well as living expenses for Hicks and his wife.

The SEC's motion precipitated a telephone conference in this case with counsel for the SEC, Southridge, Hicks, Fairfield County Bank, and ICP. Following the conference, I issued the following ruling:

> Based on the points and authorities discussed in the SEC's motion, it appears that this Court has equitable jurisdiction to enforce the Modified Freeze Order entered in this enforcement action by staying the state court proceeding and by releasing any liens, garnishments and other legal process that conflicts with the Modified Freeze Order. As discussed during the telephone conference, I reluctantly conclude that in the unusual circumstances presented here, exercising this equitable jurisdiction to issue the stay and release requested by the SEC is necessary and appropriate. The SEC is likely to prevail on the merits of its claim that this Court's jurisdiction over the assets in question takes precedence and that the Modified Freeze Order protects the assets against conflicting liens, garnishments or other legal process arising from the state court action. In addition, and as also discussed during the telephone conference, I conclude that the requested stay and release are consistent with the balance of equities and the public interest. [ICP] is welcome to file a motion to intervene in this action in order to seek whatever relief it deems appropriate. The stay will remain in effect until further order of this Court.

ICP then intervened and filed the present motion for reconsideration.

II.   Legal Standard

"The standard for granting" a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted) (quoting 18B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 4478 (2d ed. 2002)). ICP does not contend that there has been a change of law or new evidence; rather, it argues that the Court must act to correct an error and prevent injustice.

III. Discussion

ICP contends that the Court erred in relying on the Modified Freeze Order to stay the litigation in state court and release the certificate of attachment/garnishment for essentially two reasons: the Modified Freeze Order does not

5

contain language directed at creditors; and, in order to exercise control over Hicks's property, the Court had to first appoint a receiver or trustee. Neither argument warrants reconsideration.

ICP's first argument elevates form over substance. The Modified Freeze Order plainly applied to all persons and entities holding Hicks's property. ICP's efforts to attach or garnish that very property posed a direct threat to the interests protected by the order. ICP understood this, as shown by its description of the SEC as a "competing judgment creditor." In retrospect, it might have been better if the order had referred specifically to creditors like ICP. However, that the order applied to the property ICP wanted to attach was clear enough.

Giving the order the construction requested by ICP would encourage creditors to try to enlist the aid of state courts in similar efforts to circumvent asset freeze orders obtained by the SEC. It goes without saying that such efforts should not be encouraged. Even in cases involving only private interests,

> [i]t is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court. . . . [T]here has developed the general rule that for proceedings in rem or quasi in rem . . . the state or federal court having custody of . . . property has exclusive jurisdiction to proceed. . . . The rule applies

6

as well where (although not strictly in rem or quasi in rem,) suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property.

Lankenu v. Coggeshall v. Hicks, 350 F.2d 61, 64 (2d Cir. 1965) (citations and internal quotation marks omitted).

ICP's second argument is similarly unpersuasive. Courts may opt to exercise control over property through the appointment of a receiver or trustee. E.g., S.E.C. v. Wencke, 622 F.2d 1363, 1365 (9th Cir. 1980). But they need not do so. See S.E.C. v. Kaplan, No. 3:16-CV-00270-MMD-CBC, 2019 WL 4601839, at *2-3 (D. Nev. Sept. 20, 2019) (third party's attempt to execute on judgment against property was in violation of asset freeze order, even though no receiver had been appointed), aff'd sub nom. S.E.C. v. Dean Properties, LLC, 828 F. App'x 374 (9th Cir. 2020).[1] Rather, a freeze order may be relied on to safeguard the federal court's jurisdiction against undue interference by persons acting under state law. See S.E.C. v. First Choice Management Services, Inc., No. 3:00-CV-446 (RM), 2010 WL 148313, at *10 (N.D. Ind. Jan. 12, 2010) ("[O]perations of state law don't somehow limit the effect of a federal court's

---

[1] ICP does not cite, and research has not disclosed, any authority requiring appointment of a receiver as a necessary precondition for a court to issue a stay to protect its jurisdiction in an SEC enforcement action.

7

freeze order.  This is how federal freeze orders have teeth: they can and do suspend state property rights and laws.").

Both of ICP's arguments run counter to the broad equitable powers a district court enjoys in proceedings brought by the SEC.  See United States v. First Nat'l City Bank, 379 U.S. 378, 383 (1965) ("Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." (quoting Virginian Ry. Co. v. Sys. Fed'n No. 40, 300 U.S. 515, 552 (1937))); cf. Wencke, 622 F.2d at 1371 ("The Supreme Court has repeatedly emphasized the broad equitable powers of the federal courts to shape equitable remedies to the necessities of particular cases, especially where a federal agency seeks enforcement in the public interest.").

Like this case, Wencke also involved a stay of state court litigation.  In affirming the stay, the Ninth Circuit stated:

> [t]he federal courts have inherent equitable authority to issue a variety of "ancillary relief" measures in actions brought by the SEC to enforce the federal securities laws. . . . The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws.  Rather, the authority derives from the inherent power of a court of equity to fashion effective relief.

8

Id. (footnote markers omitted).[2]

The Second Circuit has a similar view of a court's equitable power. In the Lankenau case quoted above, the SEC was investigating Brown, a broker-dealer. 350 F.2d 61. Another broker, Coggeshall & Hicks ("C&H"), obtained a New York warrant of attachment "to be used for security purposes in an in personam action against Brown for conversion in which it sought $12,887 in damages." Id. at 62. The SEC then sued Brown in the Southern District of New York, which entered an order staying other lawsuits. Id. C&H moved for modification of the order to enable it to pursue its prior pending state action involving the attachment. Id. The Court granted the motion, apparently in the belief that "it was without power to continue the stay against further enforcement of C&H's attachment." Id. at 67. The Second Circuit reversed, holding that the District Court had the power to stay enforcement of the state-court proceeding notwithstanding the prior attachment.

IV. Conclusion

Accordingly, the motion for reconsideration is denied.

So ordered this 30th day of September 2021.

/s/ RNC
Robert N. Chatigny
United States District Judge

---

[2] The "ancillary relief" discussed in Wencke includes freeze orders. See Unifund SAL, 910 F.2d at 1041.